**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES SHARA,**

      **Plaintiff,**

  v.                                                                            No. 3:20-cv-41
                                                                                                                            (TJM/ML)

**MAINE-ENDWELL CENTRAL SCHOOL**
**DISTRICT,**

      **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

      Before the Court is Defendant's motion to dismiss the Complaint. See dkt. # 5. The parties have briefed the issues, and the Court has determined to decide the matter without oral argument.

**I.    Background**

      This case involves Plaintiff James Shara's employment as a bus driver with Defendant Maine-Endwell School District ("Maine-Endwell"). See Complaint ("Complt."), dkt. # 1. Plaintiff alleges that he performed his job satisfactorily until his unlawful termination on January 10, 2019. Id. at ¶ 1. In May of 2018, union members elected Shara as Vice President of the union that represented bus drivers. Id. at ¶ 2. He became involved in negotiations about safety issues, as well as other contractual matters. Id. Plaintiff

1

alleges that his termination came because of his union activity. Id. at ¶ 3.

Defendant hired Plaintiff as a probationary bus driver in June 2016, and his job became permanent in July 2017. Id. at ¶¶ 9-10. After May 2018, Plaintiff began to carry out his responsibilities as Vice President of the Maine-Endwell Transportation Association, including a number of conversations with Maine-Endwell officials. Id. at ¶¶ 12-13. Over the next few months, Plaintiff began to raise issues about bus safety on behalf of union members. Id. at ¶ 14.

On or about October 26, 2018, Plaintiff began to speak with "transportation mechanic" Doug Miller about safety issues concerning two District buses that had failed inspection. Id. at ¶ 15. Plaintiff and Miller disagreed about how such issues should be reported. Id. at ¶ 16. Plaintiff insisted that safety issues must be reported every day until the issue got corrected, while Miller claimed that the issues need only be reported once. Id. Mike Aubel, Maine-Endwell's Director of Auxiliary Services, agreed with Miller. Id.

Plaintiff, acting only in his role as Union Vice President, continued these discussions about safety issues and reporting requirements. Id. at ¶ 17. Maine-Endwell's Director of Personnel Relations, Randy J. Ray, told Plaintiff that he would be charged with insubordination if he continued to raise these issues, even though Plaintiff was speaking in his role as Vice President of his Union. Id. at ¶ 18. Plaintiff contends that Ray violated his First Amendment rights by "interfering with protected Union activity." Id. at ¶ 19. Plaintiff further alleges that the District sought to negotiate with another representative from the Union. Id. at ¶ 20. Joseph W. Beasley, who served as a Union Labor Relations Specialist, informed Maine-Endwell "agents" that Plaintiff had a right to advocate for workplace safety concerns as Union Vice President. Id.

2

Aubel sent Plaintiff a counseling memorandum on January 4, 2019. Id. at ¶ 21. Aubel wrote that Plaintiff had to comply with "expectations," including "the discussions plaintiff was carrying out in his" Union "capacity[.]" Id. at ¶ 21. Aubel threatened that if Plaintiff's conduct continued he could face a disciplinary action. Id. Such an action could include termination. Id. Maine-Endwell placed Plaintiff on administrative leave on January 7, 2019. Id. at ¶ 22. Still, Plaintiff alleges, Maine-Endwell's "agents and officers continued to harass him," characterizing Plaintiff's Union activities as "insubordination." Id. On January 10, 2019, Plaintiff claims, Maine-Endwell terminated him because of his Union activity. Id. at ¶ 23. This termination caused Plaintiff "emotional anguish and mental distress." Id. at ¶ 24. Plaintiff also lost pay, a chance at promotion, and fringe benefits. Id. at ¶ 27.

Plaintiff's Complaint does not allege the statute under which he sues the Defendant, though he does allege that Maine-Endwell violated his First Amendment rights. He seeks compensatory damages, reinstatement, and attorneys fees.

Defendant responded to the Complaint by filing the instant motion to dismiss. The parties have briefed the issues, bringing the case to its present posture.

## II. LEGAL STANDARD

Defendant moves in part to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Daly v. Citigoup, Inc., 939 F.3d 415, 425 (2d Cir. 2019) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all

3

uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F3d 239, 243 (2d Cir. 2014). When "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by evidence outside the pleadings, such as affidavits.'" Id. (quoting APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)). A party who asserts jurisdiction "'has the burden of proving by a preponderance of the evidence that it exists.'" Id. (quoting Makarova, 201 F.3d at 113). The court need not "'accept as true a legal conclusion coached as a factual allegation.'" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Papasan v. Allain, 478 U..S. 265, 266 (1986)). "'[T]he district court can refer to evidence outside the pleadings' when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." Broidy Capital Mgmt., LLC v. Benomar, 944 F.3d 436, 441 (2d Cir. 2019) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)). A party can offer evidence "'by affidavit or otherwise.'" Id. (quoting Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Defendant also moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS

Defendant raises two bases for dismissing the Plaintiff's Complaint, which the Court will address in turn.

### A. Lack of Subject Matter Jurisdiction

In support of its argument that the Court lacks subject matter jurisdiction to hear the case, Defendant argues that the Court lacks subject matter jurisdiction over this case because "[c]laims identical to those which Plaintiff advances in the instant case have already been fully litigated and are pending final adjudication" in a proceeding before the New York Public Employment Review Board. Defendant contends that Plaintiff's claims here are thus barred by the doctrine of collateral estoppel.

Collateral estoppel "precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." Boguslavsky v. Kaplan, 159 F.3d 715, 719-720 (2d Cir. 1998). Collateral estoppel requires four elements: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). In addition to these elements, the "court must satisfy itself that application of the doctrine is fair." Bear, Stearns & Co. v. 1109580 Ont. Inc., 409 F.3d 87, 91 (2d Cir. 2005). "Once a matter has been

5

litigated and decided, a party may be foreclosed from litigating the same issue again." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Defendant here argues that Plaintiff has had a full and fair opportunity to litigate the issues in a New York administrative proceeding. At the same time, Defendant also admits that no decision has been rendered in that case. Since the doctrine of collateral estoppel applies only when an issue has been both "litigated and decided," collateral estoppel does not apply, even if the Court could find the issues in the two proceedings the same. Id. The Court will deny the motion in this respect.

### B.     Motion to Dismiss

Defendant argues that Plaintiff has failed to state a claim that Defendant violated his First Amendment rights. Plaintiff contends that Maine-Endwell fired him because he engaged in union activity, and that this firing violated his rights, "including but not limited to the First Amendment, thereby interfering with Union activity." Complt. at ¶ 19. Defendant argues that the allegations do not state a First Amendment claim because Plaintiff was a public employee speaking on a workplace issue, not a matter of public concern. Under those circumstances, the District contends, the First Amendment does not apply.

The Plaintiff attempts to state a First Amendment retaliation claim. To raise such a cause of action, he "must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against him; and (3) there was a causal connection between the adverse action and the protected speech." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d cir. 2011). Here, Plaintiff is a public employee. "'The mere fact of government employment does not result in the evisceration of an employees' First Amendment Rights.'" Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013)

6

(quoting Johnson v. Garim, 342 F.3d 105, 112 (2d Cir. 2003)).  Still, "public employment does substantially curtail the right to speak freely in a government workplace."  Id.  "One limitation is that the First Amendment protects a public employee from retaliation by his or her employer for the employees' speech only if 'the employee sp[eaks] [1] as a citizen [2] on a matter of public concern."  Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

"Whether speech is on a matter of public concern is a question of law, and 'is to be answered by the court after examining the 'content, form, and context of a given statement, as revealed by the whole record.'" Montero v. City of Yonkers, 890 F.3d 386, 399 (2d Cir. 2018) (quoting Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011)).  To qualify as protected speech, "'an employees expression must be fairly considered as relating to any matter of political, social, or other concern to the community.'" Id. (quoting Jackler, 658 F.3d at 236). "[S]peech that principally focuses on an issue that is personal in nature and generally reltated to [the speaker's] own situation, or that is calculated to redress personal grievances–even if touching on a matter of personal importance–does not qualify for First Amendment protection[.]" Id. (internal quotations and citations omitted).  Not "all activities undertaken through a union necessarily become matters of public concern merely by virtue of their collateral connection to the union." Lynch v. Ackley, 811 F.3d 569, 582 (2d Cir. 2016).

Defendant argues that Plaintiff did not speak on a matter of public concern but instead raised issues about his workplace by using internal means. Plaintiff, the District insists, therefore acted as employee and cannot obtain First Amendment protection for his speech.  Plaintiff's response does not address this standard directly.  He instead argues that his speech came as a Union Vice President "involved in negotiations concerning safety

7

and other issues," and that he was fired for that activity.

Plaintiff's complaint alleges that, after his election as Vice President, he "began advocating on behalf of the Union members with respect to issues relating to bus safety." Complt. at ¶ 14. He had a disagreement with a bus mechanic and the District's Director of Auxiliary services about how often safety issues with the buses needed to be reported. Id. at ¶ 16. Discussions continued for weeks "with plaintiff acting solely in his role as Vice President of the Union[.]" Id. at ¶ 17. The discussions concerned "safety issues and reporting requirements." Id. Plaintiff contends that Defendant punished him for this activity, but that he "had every right to bring up workplace concerns regarding safety issues during Union negotiations." Id. at ¶ 20.

The Court finds that Plaintiff has not alleged that his firing came because he spoke as a private citizen on a matter of public concern. Instead, his Complaint admits that he spoke about workplace issues and concerns with his employer. When an employee speaks "pursuant to his official duties" that employee does not speak "as a citizen" and is not entitled to First Amendment protection. Weintraub v. Bd. of Educ., 593 F.3d 196, 201 (2d Cir. 2010). When Plaintiff complained about the procedure to notify his employer about unsafe bus conditions, he spoke "'pursuant to'" his "job duties[.]" Id. (quoting Garcetti, 547 U.S. at 421). His speech "owe[d] its existence to [his] professional responsibilities'" and was not on a matter of public concern. Id. (quoting Garcetti, 547 U.S. at 421). The speech concerned Plaintiff's "ability to 'properly execute his duties'" as a school bus driver. Id. (quoting Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (2d Cir. 2007)). Even if the speech grew partly from Plaintiff's role in the union, the speech still addressed a matter of job performance and requirements, and not an issue that concerned the public. Such

8

speech by a public employee is not protected by the First Amendment, and the Court must grant the Defendant's motion. Since the factual allegations in Plaintiff's complaint reveal that he complains of speech not protected by the First Amendment, the Court will grant the motion with prejudice.

## V.     CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss, dkt. # 5, is GRANTED WITH PREJUDICE. The Clerk of Court is directed to CLOSE the case.

**IT IS SO ORDERED.**

Dated: June 12, 2020

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge